IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| MICHAEL F. CROXSON, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-16-449 |
| SENECA ONE FINANCE, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Following his termination as President of Seneca One Finance, Inc. ("Seneca"), Michael Croxson filed suit in the Circuit Court for Montgomery County, alleging that the termination violated Montgomery County's employment-discrimination law and that Seneca breached Croxson's Employment Agreement and violated state law by failing to make severance payments, provide post-termination healthcare benefits, or compensate him for accrued leave. Am. Compl., ECF No. 7.  Seneca removed the case to this Court and moved to dismiss, contending that most of Croxson's claims are preempted by the Employment Retirement Income Security Act of 1974 (ERISA) because they "relate to" an employee-benefits plan covered by the Act and, for the others, that Croxson failed to state a claim for which relief can be granted. ECF No. 35. The Motion has been fully briefed,[1] *see* Def.'s Mem., ECF No. 35-1; Pl.'s Opp'n, ECF

---

[1] In violation of the Court's newly revised Local Rules, both plaintiff's and defense counsel used less than twelve-point sized font in their footnotes. *See* Loc. R. 102.2(b) (D. Md. 2016). Future filings that do so will be stricken from the docket.

No. 37; Def.'s Reply, ECF No. 38; Pl.'s Surreply, ECF No. 41,[2] and no hearing is necessary, *see* Loc. R. 105.6 (D. Md.).

This Memorandum Opinion and Order grants Seneca's Motion in part and denies it in part. Croxson's state-law claims that seek damages for the post-termination denial of his healthcare benefits are dismissed with prejudice because they are preempted by ERISA and cannot be reframed as a claim under the statute's civil-enforcement provision; however, Croxson's wrongful-discharge claim, for which he seeks restoration of his healthcare benefits can proceed as an ERISA claim. Determining whether Croxson's breach-of-contract claim for severance pay is preempted by ERISA requires factual determinations that cannot be made at the motion-to-dismiss stage. This claim may proceed. Finally, Croxson has not stated a valid breach-of-contract claim for accrued leave, but has stated a claim for the unpaid leave under the Maryland Wage Payment Collection Act (MWPCL).

## Background

In 2015, Seneca faced financial difficulties and commenced discussions about downsizing its workforce. Am. Compl. ¶ 35. In November of that year, Seneca's health-insurance broker informed the company that it would face a fifteen percent increase in 2016 health-insurance expenses due mostly to the cost of covering medication for Croxson's son, who is diagnosed with cystic fibrosis. *Id.* ¶ 38. Shortly thereafter, Seneca terminated Croxson's employment. *Id.* ¶ 39. Based on the timing of the layoff and the absence of Croxson's name

---

[2] I granted Croxson permission to file a Surreply. ECF No. 40. Seneca filed a letter with the Court requesting permission to file a Motion to Strike Croxson's Surreply as duplicative of arguments already made in his Opposition. ECF No. 42. I issued a Paperless Order construing Seneca's letter as a Motion to Strike and permitting the parties to submit an Opposition and Reply in letter form, ECF No. 44, which they did, Def.'s Ltr. Opp'n, ECF No. 45; Pl.'s Ltr. Reply, ECF No. 46. Having considered the filings, I find the Surreply duplicative and strike it.

from previous layoff discussions, Croxson alleges that the company targeted him for termination in order to avoid the increased healthcare costs. *Id.* ¶¶ 39–42.

      Croxson's Employment Agreement provides:

> We will also provide one year's severance if you are terminated not for cause . . . . This severance is equal to your base salary and will be paid monthly for a year or until you find new employment with a comparable salary if within a year of termination. We will also provide continued comparable healthcare benefits for a year or until new employment is secured.

*Id.* ¶ 7. Croxson did not receive severance pay or continued healthcare benefits after his termination. *Id.* ¶ 11. Seneca also did not compensate Croxson for accrued leave, and the Employment Agreement did not explicitly require it to do so. *Id.* ¶¶ 10–11.

      Croxson seeks actual and enhanced damages for Seneca's omissions under a breach-of-contract theory (Count I) and under the MWPCL (Count II). *Id.* ¶¶ 15–16, 25. He also alleges that his termination violated Montgomery County's employment-discrimination law, which prohibits termination of an employee because of "family responsibilities," *id.* ¶¶ 43–45 (quoting Montgomery Cnty., Md. Code § 27–19(a)), and seeks actual and enhanced damages as well as restoration of his health-insurance coverage as remedies (Count III, Prayer for Relief ¶¶ 1–4).

## **Standard of Review**

      Rule 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss

pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see also Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

### Wrongful Discharge

Seneca argues that Croxson's wrongful-discharge claim, which is based upon alleged violations of the Montgomery County Code, is preempted by ERISA because it turns on whether Seneca terminated his employment in order to avoid paying him ERISA benefits. Def. Mem. 6–7. Before considering this argument, a distinction must be drawn between complete and conflict preemption, two separate doctrines both implicated by ERISA. Conflict preemption occurs "where compliance with both federal and state regulations is a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963). "Section 514 of ERISA defines the scope of ERISA's preemption of conflicting state laws . . . ." *Sonoco Prods. Co. v. Physician Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir. 2003). That section dictates that ERISA "supersede[s] any and all State laws . . . [that] relate to any employee benefit plan" enumerated in the statute." § 514, 29 U.S.C. § 1144(a). The Supreme Court has interpreted § 514 broadly, holding that a state law relates to an employee benefit plan " 'if it has a connection with or reference to such a plan,' . . . even if the law is not specifically designed to affect such plans, or

the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)).

By contrast, complete preemption occurs in the narrow circumstances where Congress intended federal law not just to supersede conflicting state law but to "displace entirely any [analogous] state cause of action." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983). In instances of complete preemption, "the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute." *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003). "[A] state action that is *not just pre-empted by* ERISA, but also [comes] 'within the scope of § 502(a) of ERISA' " is completely preempted. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987) (emphasis added) (quoting *Franchise Tax Bd.*, 263 U.S. at 24). For ERISA to completely preempt a state law claim:

> (1) the plaintiff must have standing under § 502(a) to pursue [his or her] claim; (2) [the] claim must "fall[] within the scope of an ERISA provision that . . . can [be] enforce[d] via § 502(a)"; and (3) the claim must not be capable of resolution 'without an interpretation of the contract governed by federal law," i.e. an ERISA-governed employee benefit plan.

*Sonoco*, 338 F.3d at 371 (third alteration in original) (quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996)).

Seneca removed this case to federal court on the ground that Croxson's claims, as they pertain to his healthcare benefits and severance pay, are completely preempted by ERISA. Notice of Removal ¶ 5. In its Motion to Dismiss, however, Seneca argues that these claims should be dismissed with prejudice. Def.'s Reply, 6–7. Croxson argues that if the claims are preempted, they should be construed, if possible, as § 502(a) claims. Pl.'s Opp'n 20–21. Each side is partially correct. "[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not

dismiss the claim as preempted, but should treat it as a federal claim under § 502." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002). Prior to filing its Motion to Dismiss Croxson's Complaint (which had been amended once before), Seneca set forth for the Court and Croxson the law and facts supporting its preemption claims, Def.'s Ltr., ECF No. 32, and I provided Croxson an opportunity to further amend his Complaint to address the deficiencies perceived by Seneca. Croxson declined to do so and instead elected to stand on the Amended Complaint without modification. Consequently, any of Croxson's claims that are preempted by ERISA but are not cognizable under § 502(a) will be dismissed with prejudice. *See, e.g.*, *Alexander v. Provident Life & Accident Ins. Co.*, No. 96-2834, 1998 WL 462807, at *1–2 (4th Cir. Aug. 5, 1998) (per curiam) (dismissing state-law claims with prejudice where plaintiffs, after being made aware of ERISA preemption issues, amended their Complaint but restated state-law claims).

Section 502(a)(3) allows a "participant" in an ERISA-covered plan "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3). ERISA-covered plans include health-insurance plans. *See* 29 U.S.C. § 1002(1). Among other practices prohibited by ERISA, the statute bars employers from "discharge[ing] . . . a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Id.* § 1140. Section 502(a) does not "entitle[] [a plaintiff] to compensatory or punitive relief." *Darcangelo*, 292 F.3d at 195.

Count III is a claim for wrongful termination under Montgomery County law. Am. Compl. ¶ 28. It alleges that Seneca terminated Croxson "solely for the purpose of avoiding its

obligations to provide health insurance coverage to Croxson and his family members." *Id.* ¶ 46. While Croxson clearly seeks compensatory and punitive damages that are not recoverable under § 502(a), *id.*, Count III, Prayer for Relief ¶¶ 1–3, he also seeks the restoration of his healthcare benefits, *id.* ¶¶ 4. Thus, Count III asserts claims that fall within the purview of a claim for injunctive relief cognizable under § 502(a)(3) to redress a violation of ERISA's prohibition on terminating employees for the purpose of avoiding obligations under an ERISA-covered plan. *See* 28 U.S.C. §§ 1132(a)(3), 1140. Thus, Count III states a valid claim under ERISA § 502(a), as it pertains to Croxson's healthcare benefits, and it shall not be dismissed, though Croxson may not recover damages.

Breach of Contract and MWPCL Claims

1. *Healthcare Benefits*

The foregoing discussion concerning the distinction between conflict and complete preemption applies with equal force to Croxson's breach-of-contract and MWPCL claims in Counts I and II. Section 502(a)(1)(B) allows a "participant" in an ERISA-covered plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 28 U.S.C. § 1132(a)(1)(B). Among other things, Counts I and II seek compensatory and punitive damages for Seneca's denial of post-termination healthcare benefits to Croxson. Am. Compl. ¶¶ 15–16, 20–21, 23. But as previously discussed, healthcare benefits fall within an ERISA-covered plan, and § 502(a) does not permit recovery of compensatory or punitive damages as a remedy for the denial of ERISA benefits. *Linck v. Arrrow Elecs., Inc.*, No. AW-07-3078, 2009 WL 2408411, *6 (D. Md. Aug. 3, 2009) ("ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(b, . . . entitle[s] [a plaintiff] to recover only the benefits due to him and not punitive or compensatory damages.").

Thus, Counts I and II are dismissed with prejudice as they pertain to Croxson's healthcare benefits.

2. *Severance Pay*

Under his Employment Agreement, Croxson was entitled to "one year's severance" while looking for comparable employment upon termination "not for cause" in an amount equal to his "base salary" in monthly increments. Am. Compl. ¶ 7. After his termination, Croxson received no severance pay. *Id.* ¶ 11. Seneca argues that ERISA also preempts Croxson's severance-pay claim. Def's Mem. 7–9. Although Seneca believes that Croxson asserts his claim pursuant to the MWPCL, *id.*, he only seeks severance pay under a breach-of-contract theory, Am. Compl. ¶¶ 15–16, 20. Croxson argues that his claim for severance pay is not preempted because ERISA covers only "employee benefit *plans*," not standalone *benefits*. Pl.'s Opp'n 8–15 (quoting 29 U.S.C. § 1144(a) (emphasis added)).

Under certain circumstances, ERISA does regulate severance pay. *See* 29 U.S.C. § 1002(1)(B); 29 U.S.C. § 186(c). But in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), the Supreme Court distinguished between "plans"—which ERISA regulates—and "benefits"— which it does not. 482 U.S. at 11–12. The Court found that Congress "intended [ERISA] preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations," a "concern [that] only arises . . . with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *Id.* at 11. Accordingly, the Court held that ERISA only "preempt[s] state law relating to *plans*, rather than simply to *benefits*." *Id.*

Based upon *Fort Halifax*, the Fourth Circuit has found that some state-law claims concerning severance agreements are not preempted by ERISA. *See Gresham v. Lumbermen's*

*Mut. Casualty Co.*, 404 F.3d 253, 259 (4th Cir. 2005) (finding no preemption where a severance agreement required payment without "any conditions other than termination without cause" and "operated independently of [any] [s]everance [p]lan"); *Lomas v. Red Storm Entm't, Inc.*, 49 F. App'x 396, 400 (4th Cir. 2002) (finding no preemption where a severance agreement left the employer "no discretion to determine either (a) whether [the employee] was entitled to severance benefits, or (b) the amount of benefits he was to receive").  In support of its preemption argument, Seneca relies on *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291 (4th Cir. 1993), in which the court found state claims for severance pay preempted, *id.* at 298, but in that case, "the Fourth Circuit had no occasion to apply the *Fort Halifax* test and therefore [it] provides no controlling precedent on where it would draw the lines in determining what benefits require an ongoing administrative scheme," *Emery v. Bay Capital Corp.*, 354 F. Supp. 2d 589, 593 (D. Md. 2005) (quoting *Blair v. Young Phillips Corp.*, 158 F. Supp. 2d 654, 659 n.2 (W.D.N.C. 2001)).

In applying *Fort Halifax*, this Court has looked to a test adopted by the Eighth Circuit that weighs the following factors:

1) whether the payments are one-time lump sum payments or continuous payments;
2) whether the employer undertook any long-term obligation with respect to the payments;
3) whether the severance payments come due upon the occurrence of a single, unique event or whenever the employer terminates employees; and
4) whether the severance agreement under review requires the employer to engage in case-by-case review of employees.

*Id.* (citing *Emmenegger v. Bull Moose Tube Co.*, 197 F.2d 929, 934 (8th Cir. 1999)).  Thus, the analysis required by *Fort Halifax* is a fact-bound inquiry. Such factual determinations cannot be made at the motion-to-dismiss stage.  Accordingly, I will deny Seneca's Motion to Dismiss as to Croxson's claims for severance pay in Count I.  Discovery will proceed, and if the facts

subsequently demonstrate that, under the *Fort Halifax* factors, Croxson's severance pay claim is subject to preemption, that can be addressed through a motion pursuant to Fed. R. Civ. P. 56.

3. Accrued Leave

Croxson also seeks unpaid accrued leave under the Employment Agreement, Am. Compl. ¶ 11, and pursuant to the MWPCL, *id.* ¶ 20. Seneca argues that Croxson failed to state a claim because he failed to allege any contractual provision requiring compensation for accrued leave. Def.'s Mem. 10. Croxson does not dispute this and largely abandons his pursuit of unpaid accrued leave under a breach-of-contract theory. Accordingly, Count I (breach of contract), as it pertains to unpaid accrued leave, is dismissed. Croxson further maintains, however, that he has a valid claim under the MWPCL, arguing that the statute requires employers to compensate employees for accrued leave absent a written policy to the contrary. Pl.'s Opp'n 15–16.

The MWPCL requires payment for accrued leave upon termination unless "the employer has a written policy that limits the compensation of accrued leave to employees" and the employee had notice of that leave policy and was not entitled to payment under it. Md. Code Ann., Lab. & Empl. § 3-505. The Amended Complaint alleges that Croxson accrued leave, Am. Compl. ¶ 8, for which Seneca failed to compensate him within two weeks of his termination, *id.* ¶ 22. Although Croxson did not allege the absence of a written leave policy, the written-policy exception is a defense to an MWPCL claim, not an additional element of the claim. Thus, Croxson has pled a valid MWPCL claim for unpaid accrued leave.

## Conclusion

ERISA preempts Croxson's wrongful-discharge claim, however, it will proceed as a § 502(a) claim insofar as Croxson pursues restoration of his post-termination healthcare benefits as a remedy. ERISA also preempts Croxson's breach-of-contract and MWPCL claims

concerning post-termination denial of healthcare benefits, which cannot be reframed as § 502(a) claims. Determining whether ERISA preempts Croxson's severance-pay claims involves factual determinations that cannot be made at the motion-to-dismiss stage. Thus, this claim will proceed. Finally, Croxson has not stated a claim for unpaid accrued leave under a breach-of-contract theory, but he has under the MWPCL.

## ORDER

In accordance with the foregoing Memorandum Opinion, it is this 1st day of November, 2016, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Plaintiff's Surreply IS STRICKEN as duplicative of the arguments made in its Opposition.

2. Defendant's Motion IS GRANTED as to (a) Count I and II's healthcare-benefit claims; (b) Count I's unpaid-PTO claim; and (c) Count III's compensatory and punitive damages claims. These aspects of the Amended Complaint ARE DISMISSED WITH PREJUDICE.

3. Defendant's Motion IS DENIED as to (a) Count I's severance-pay claim; (b) Count II's unpaid-PTO claim; and (c) the injunctive relief sought in Count III.

4. Count III is construed as a claim for injunctive relief under ERISA § 502(a).

/S/
Paul W. Grimm
United States District Judge

jlb